UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VAUGHN HARRIS,

    Plaintiff,                                    Civil Action No. 3:15-cv-00356

vs.                                               HON. BERNARD A. FRIEDMAN

METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON
COUNTY, TENNESSEE, et al.,

    Defendants.
_____/

**OPINION AND ORDER
GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

        This matter is presently before the Court on (1) the motion of defendants Krystal Lewis, DDS ("Dr. Lewis"), Correct Care Solutions ("CCS"), and the Metropolitan Government of Nashville and Davidson County ("Metro Government") for summary judgment [docket entry 316], (2) the motion of defendant Beatrice Aluoch ("Aluoch") for summary judgment [docket entry 319], and (3) the motion of plaintiff Vaughn Harris for summary judgment [docket entry 318, PageID 3714-37]. Defendants have responded to plaintiff's motion, and plaintiff has filed a lengthy document, *see* docket entry 333, that appears intended to be a response to defendants' motions. Pursuant to Fed. R. Civ. P. 78(b), the Court shall decide these motions without a hearing.

        Plaintiff, a pro se inmate confined at the Metro-Davidson County Detention Facility in Nashville, Tennessee, has filed hundreds, if not thousands, of pages of handwritten documents in this matter, which he has variously titled complaints, amended complaints, and supplemental pleadings (as well as countless motions). The Court has determined that the operative complaint is

the amended complaint plaintiff filed on June 18, 2015 [docket entry 36]. After a series of orders of dismissal, what remains in this case are (1) plaintiff's claim that Aluoch used excessive force against him by closing his arm in a cell door in January 2015, *see* Am. Compl. PageID 289, and (2) plaintiff's claim that Dr. Lewis was deliberately indifferent to his serious medical needs by denying or delaying dental care from November 1, 2014, to approximately April 20, 2015, *see id*. PageID 283-84. Apparently, plaintiff also seeks to hold CCS and Metro Government liable for Dr. Lewis' and Aluoch's violations of his rights.

Plaintiff and defendants seek summary judgment on these claims. Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

*Excessive Force Claim*

>
> Regarding this claim, plaintiff alleges that in January 2015, the "pod officer," Aluoch,
>
> > saw me sitting in my shower shoes waiting to take a shower. She . . . told me I must change shoes immediately. So I went and changed my shoes. Upon com[]ing out of the cell, B. Aluoch closed me . . . in the 13,14 cell door and smashed my arm in the door. I had to scream to tell other inmates to get her to open the cell door and release my arm. When I was finally out of the door my arm was hurting and I asked to be sent to medical but was denied[1] and told to sit down by B. Aluoch, so I wrote a grievance to her D.C.S.O. superiors. The reply I received was they did not see me get injured clearly on camera by Weikal the Davidson County Sheriff's Office Administrator. . . . The incident happened in the month of January of 2015.

Am. Compl. PageID 289.

Plaintiff's grievance regarding this incident, dated November 19, 2014, is attached to Aluoch's summary judgment motion as an exhibit.[2] In this grievance, plaintiff wrote:

> Officer B. Louach [sic] closed my arm in the cell door and injured it when she made me take off my shower shoes even though I wanted to take a shower. This was witnessed by all inmates in 4-C on 11-19-2014 at 8 to 9 pm. She needs to be told shower shoes can be worn to the shower and to make sure and look threw the windows to make sure she do[es] not crush people.

PageID 3768.

Also attached to Aluoch's summary judgment motion is a copy of portions of plaintiff's deposition testimony. Plaintiff indicated that he could not remember which arm was injured but that "I think it'll be the right" when he testifies at trial. Pl.'s Dep. at 105, 112, 128.

---

[1] Plaintiff has abandoned his claim that Aluoch denied him medical care. He does not raise this aspect of the claim in his summary judgment motion, and at his deposition plaintiff testified that he saw a nurse the same evening as the incident. Pl.'s Dep. at 114.

[2] At his deposition, plaintiff indicated that he believed this incident occurred in early January 2015, but that "it might have been 2014." Pl.'s Dep. at 105-106.

When asked to describe the injury, plaintiff testified that his "arm was hurting really bad" and "at least I think" it was the lower half of his arm that was injured. *Id.* at 110. Plaintiff thought his arm had a scratch from this incident and that his arm may have been bruised and swollen. *Id.* at 114, 133. Plaintiff also testified that he had "[m]aybe two seconds" to move his arm out of the way when the door began to close and that although he knew the door was closing he did not move his arm because he was holding a cup of juice. *Id.* at 216-17. Plaintiff conceded that he "just misgauged the timing of the door, the closing of it." *Id.* at 228.

Aluoch has also submitted a declaration from Captain William Dailey, a sheriff's office captain who is familiar with the cells in plaintiff's unit. He avers that the cell doors "made loud noise as they slip open and shut and were easily heard" and that "[e]ach cell door in unit 4-C took at least 4 seconds to close or open after the door first began to move." Daily Decl. ¶¶ 5-6.

Plaintiff, in his motion for summary judgment, presents no documents or other evidence to support this claim, but simply reiterates his view that his Eighth and Fourteenth Amendment rights were violated by "[t]he smashing of my arm in the cell door by D.C.S.O. guard Beatrice Aluoch . . ." Pl.'s Summ. J. Mot., PageID 3718. Likewise, plaintiff's response to this motion simply reiterates his allegations.

Plaintiff states that he was a pretrial detainee at the time of this incident. *See id.* Therefore, it is the Fourteenth Amendment that applies in this case, not the Eighth. *See Hopper v. Plummer*, 887 F.3d 744, 751-52 (6th Cir. 2018). When a pretrial detainee claims he has been the victim of excessive force, he must show "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Conversely, "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due

4

process." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

In the present case, plaintiff has failed to show either that Aluoch acted "purposely or knowingly" or that she used force that was objectively unreasonable. Regarding the first prong, plaintiff testified that he does not know whether Aluoch could see him from her post at the control panel where she operated the cell door controls because "there were other inmates in the unit. And maybe that might have blocked her view." Pl.'s Dep. at 227. Plaintiff testified that when the door began to close he was in the process of leaving his cell and that Aluoch may have seen "my hand with the cup in it," but not his body in the doorway. *Id.* at 226. Captain Dailey avers that "[a]n inmate would not be visible to the correctional officer operating the control panel if the inmate was located inside of [his] cell." Dailey Decl. ¶ 7. Further, plaintiff conceded that the door did not close instantly, but that he had "[m]aybe two seconds" to move out of the doorway once the door began to close,[3] and that it was his own failure to "[]gauge the timing of the door," and his wish not to spill his cup of juice, that caused him not to move more quickly, unlike on previous occasions when he had safely moved out of the way of the closing cell door. Pl.'s Dep. at 216-17, 227-28. In short, on this record a jury could only find that Aluoch pressed the button to close plaintiff's cell door, not that she "purposely or knowingly used [force] against him." At most, a jury might find that Aluoch was negligent, but a constitutional claim cannot be based on negligence.

Regarding the second prong, plaintiff has produced scant evidence that he suffered an injury, i.e., that any force was used at all. Plaintiff's deposition testimony was so uncertain and equivocal about which arm was injured that a jury could find in his favor on this issue only by

---

[3] As noted above, Dailey avers that the cell doors in plaintiff's unit took "at least 4 seconds" to close. Dailey Decl. ¶ 6.

5

engaging in impermissible speculation. Even if a jury could find that plaintiff's arm was caught in the door, plaintiff's testimony that he "think[s]" and "believe[s]" his arm was swollen and bruised, and that there was "[m]aybe a scratch," *id.* at 114, defeats his claim because a de mimimis injury suggests that de mimimis force was used. *See Leary v. Livingston Cty.*, 528 F.3d 438, 443-45 (6th Cir. 2008). As in *Leary*, plaintiff in the present case has produced no evidence that he suffered an "objectively verifiable injury." *Id.* at 443. Plaintiff's claim is independently defeated by his admission that he had at least two seconds (and more likely four seconds) to move out of the way when the door began to close, as this shows plaintiff had ample opportunity to avoid the "force," but he simply elected not to do so in order not to spill his cup of juice.

The Court concludes that plaintiff has failed to meet his burden of producing evidence that Aluoch purposely or knowingly used objectively unreasonable force against him. Consequently, the Court shall grant her motion for summary judgment and deny plaintiff's cross motion for summary judgment regarding this incident. To the extent plaintiff seeks to assert a *Monell* "policy or custom" claim against CCS and/or Metro Government for this incident, summary judgment is granted for defendants and against plaintiff on any such claim as well.

***Denial of Dental Care Claim***

Regarding this claim, plaintiff alleges that

> [i]n November of 2014 I . . . turn[ed] in a request to the dentist to have a temporary tooth filling put into a tooth that was starting a cavity due to a gravel being located in my D.C.S.O. food. When I was first seen by the dentist, Dr. A. Lewis, she said that my tooth was not too far deteriorated and did not need to be pulled. I said I did not want it pulled but I did want a temporary tooth filling. So she said to me take some antibiotics and come back. When I returned she claimed the tooth could not be saved. This was the same lie she had just told the patient before me on 11-18-2014. She has denied me

6

> dentle care for 5 months even though I have sent in repeated request for dentle care and grievances to the Davison County Sheriffs Office Medical Department. I feel this is cruel and unusual punishment malpractice and deliberate indifference to my health, and is a violation of my 8th and 14th Amendment rights to the United States Constitution. . . . I no longer trust this dentle person with my care and hope the Court files an order that my dentle care be placed with another dentist like Meharry Dentle School or another private dentist due to intentional neglect and malpractice by Dr. A. Lewis. Dr. A. Lewis intentionally inflicted cruel and unusual punishment on me . . . by denying me dentle care while in her official capacity as the Davidson County C.J.C. dentist and I am suing her and Correct Care Solutions for this intentional pain and suffering. . . .
>
> I . . . never said I wanted to delay dentle care, the dentist, A. Lewis claimed the tooth could ~~not~~ be saved the first time I visited her. The second time I . . . visited the dentist A. Lewis, she had just told the patient seen just prior to me that he could not receive a temporary tooth filling also even though he had a cavity but the tooth was not in pain yet. This shows a pattern of neglect to D.C.S.O. jail patients dentle care by A. Lewis. The dentist should be cited for malpractice and deliberate indifference. I have been in constant pain for more than a month due to neglect. . . . There is a regular practice of denying dentle patients temporary tooth fillings and insted pulling inmates teeth even though the teeth could have been repaired or given a temporary filling. This is a custom of the C.J.C. dentist of Correct Care Solutions.

Am. Compl. PageID 283-84.

In his motion for summary judgment, plaintiff presents no documents or other evidence to support this claim, but simply reiterates his view that his Eighth and Fourteenth Amendment rights were violated when his dental care was denied or delayed. Plaintiff asserts:

> Dr. Krystal Lewis used Metro. Policy (Tenn. Code Ann. 29-20-205) to deliberately delay and refuse to fill my simple teeth cavities for about 4 months until the delay deteriorated my teeth to the teeth nerves. And then she repeatedly lied and claimed I could not get a root canal from Metro., even though I could under Correct Care Solutions policy, but not by Metro. Abuse policy (Tenn. Code Ann. 29-20-205), of delay and extract for profit, because Dr. Lewis had ill will against me anyway. But after I filed suit against her and my teeth

7

were in extreme pain, she refused me, Harris, pain relief medication for about 7 months or 8 and kept lieing, claiming I wanted my teeth #4 and #5 extracted, which I wanted to keep. Her deliberate indifference to my dentle pain relief care and repair of my teeth caused me terrible injury and (unnecessary unbearable pain and suffering) and is still causing great internal damage to my (health and remaining teeth and health). Also the unnecessary pain and suffering I endured and am still enduring for the last 4 years is malicious and sadistic (medical abuse) carried out under Metro. Abuse policy (Tenn. Code Ann. 29-20-205) in conjuction with a conspiracy of the other Metro. D.C.S.O. agents and C.C.S. medical staff personel . . . . Dr. Lewis knew from my repeated dentle medical request (that I was from date 3-17-2015 in great pain) and from her medical degree experience that I had a dentle medical condition of urgency serious medical need from date 10-29-2014, but Dr. Lewis refused to perform the proper procedure for filling (my the) cavity in a timely manner deliberately, because of animus against me from a prior dentle encounter and Metro. Policy rule (Tenn. Code Ann. 29-20-205) abuse. Dr. Lewis's culpability was greater than mere negligence, her omissions of cavity dentle care and teeth pain relief care were "for the very purpose of causing harm or with the knowledge that harm would result." <u>Farmer v. Brennan</u>, 511 U.S. at 835. This deliberate indifference to my dentle pain care needs and my need for a cavity filling or root canal in a timely manner made me suffer unnecessary cruel and unusual punishment by Dr. Lewis in violation of my 8th and 14th Amendment rights . . . .

\* \* \*

Dr. Lewis's denial of dentle pain relief and dentle care for months to me constituted cruel and unusual punishment and wanton infliction of pain to cause unnecessary harm and injury. After (numerous months of sick calls from 3-16-2015 to 8-20-2015, grievances, and appeals) being filed to the Metro. D.C.S.O. and (C.C.S. medical staff), I was sent to Mettarry Dentle School with the wrong (dentle diagnosis) by Dr. Krystal Lewis. So I declined the unneeded extraction she had diagnosed of teeth #4 and #5, because she knew I had requested root canals for these teeth I wanted saved. This visit to Mettarry was on 8-20-2015, after 9 months of lies and delays by (Dr. Lewis Metro. Staff) and C.C.S. medical and dentle staff delay under (Nashville, TN Tenn. Code Ann. 29-20-205), even though they all knew I had a (medical condition) of urgency to save my teeth and avoid unnecessary pain and extraction of my good teeth. At the 8-20-

> 2015 dentle visit I was informed that I could save my teeth #4 and #5 by root canals, of which I informed Dr. Lewis of on return to the D.C.S.O. dentist.

Pl.'s Summ. J. Mot., PageID 3716-17, 3721.

Despite plaintiff's allegations that Dr. Lewis was deliberately indifferent to his pain and to his needs for dental care, the actual records of plaintiff's requests for care and of the care provided tell a much different story. On October 29, 2014, plaintiff submitted a healthcare request for "a temporary tooth filling to stop a cavity in my tooth." Aff. of Melinda Stephens (docket entry 331-1) Ex. 1. A nurse examined plaintiff on November 1, 2014, prescribed Tylenol, and referred him for a dental examination. *Id.* Exs. 2, 3. Dr. Lewis examined plaintiff on November 18, 2014, took x-rays, diagnosed "multiple small pit and fissure lesions Teeth #4 and 5 interproximal decay with missing tooth structure," and prescribed antibiotics and ibuprofen. *Id.* Ex. 4 Page ID 4058. She determined that the treatment options were either root canals or extraction. *Id.* Plaintiff "verbalized that he understood that root canal treatment is not offered here and elected to wait until he is transferred to prison." *Id.* Over the next ten days, plaintiff refused the prescriptions for Tylenol and ibuprofen because this was "too much medicine" and he was not in pain. *Id.* PageID 4063-77.

On January 7, 2015, plaintiff submitted another healthcare request, again claiming that "I need some temporary tooth fillings." *Id.* Ex. 5. A nurse examined him on January 12, 2015, prescribed Tylenol, and referred him for a dental examination. *Id.* Ex. 6. For the next week, plaintiff again refused these prescriptions because he was "not in pain now." *Id.* Ex. 7. On February 3, 2015, plaintiff was seen by Dr. Lewis, at which time she made the same findings and prescribed similar medications as before. *Id.* Ex. 8, PageID 4090. Her treatment notes state:

> Pt presented very combative and argumentive [sic]. Pt stated that I

9

> had informed him at previous appointment 11/18/14 that he is in need of two fillings. Informed patient that at last dental appointment that he was informed that the teeth would need RCT's in order to be saved. Pt verbalized at the 11/18/14 appointment that he understood that root canal treatment is not offered here and elected at that time . . . to wait until he is transferred to prison. Pt stated that he was not accepting recommended treatment and that all he needed was to have fillings placed. Pt stated that he did not want[] root canal and was not going to let me take out his tooth. Pt stated that his bottom tooth was hurting him. Pt refused to be compliant while trying to get a radiograph of lower bottom tooth while in dental chair. Pt became very rude. Copral [sic] Jones at that point escorted patient out of dental operatory.

*Id.* PageID 4088.

On March 18, 2015, plaintiff submitted another healthcare request, claiming he "need[ed] some pain relievers now due to the dentist refusing to fill my tooth." *Id.* Ex. 9. A nurse examined him on March 20, 2015, and prescribed Tylenol. *Id.* Ex. 10. On June 18, 2015, plaintiff submitted a sick call request, now claiming he had "a broken wisdom tooth that needs to be pulled or filled and other teeth that need fillings." *Id.* Ex. 11. A nurse examined him on June 28, 2015, prescribed ibuprofen, and referred him to the dentist. *Id.* PageID 4099-4102. But plaintiff refused to attend his June 23, 2015, appointment with Dr. Lewis, claiming that "I am in fear that the dentist dose not want to fix my teeth and I want my tooth exam rescheduled for next week or tomorrow." *Id.* Ex. 13.

The legal standards governing plaintiff's deliberate indifference claim are well known. The Sixth Circuit recently summarized them as follows:

> "There are two parts to the claim, one objective, one subjective. For the objective component, the detainee must demonstrate the existence of a sufficiently serious medical need." *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009) (quoting *Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005)). . . .

10

> "For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Spears*, 589 F.3d at 254 (quoting *Estate of Carter*, 408 F.3d at 311). A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). This means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.
>
> A plaintiff need not show that the defendant acted with the very purpose of causing harm, but must show something greater than negligence or malpractice. *Id*. at 835, 114 S.Ct. 1970; *see also Rouster*, 749 F.3d at 446-47 ("The subjective requirement is designed 'to prevent the constitutionalization of medical malpractice claims.'" (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). The standard, then, has generally been equated with one of "recklessness." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970; *see also, e.g., Shadrick*, 805 F.3d at 737–38.

*Winkler v. Madison Cty.*, 893 F.3d 877, 890-91 (6th Cir. 2018). However, "[a]llegations 'that more should have been done by way of diagnosis and treatment' and 'suggest[ions]' of other 'options that were not pursued' raise at most a claim of medical malpractice, not a cognizable Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d 721, 741 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 107 (1976)). Further,

> [a] doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful. *See Farmer*, 511 U.S. at 844, 114 S.Ct. 1970. . . . Accordingly, when a claimant challenges the adequacy of an inmate's treatment, "this Court is deferential to the judgments of medical professionals." *Richmond*, 885 F.3d at 940. That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided "some treatment for the inmates' medical needs." *Id*. But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have "consciously expos[ed] the patient to an excessive risk of serious harm." *Id*.

11

*Rhinehart*, 894 F.3d at 738-39. That is, "in order to show deliberate indifference, a plaintiff must allege more than negligence or the misdiagnosis of an ailment. When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation.'" *Winkler,* 893 F.3d at 891 (citations and internal quotation marks omitted).

The Court assumes for present purposes that plaintiff's painful teeth constituted a serious medical need. Nonetheless, his Fourteenth Amendment claim fails because on this record no jury could find that Dr. Lewis was deliberately indifferent to that need. On the four occasions when plaintiff requested dental care (on October 29, 2014, and on January 7, March 18, and June 18, 2015), he was promptly seen and evaluated by a nurse, who prescribed pain medication. On the first and second occasions, plaintiff was also referred to Dr. Lewis, who likewise saw him promptly, examined him (including by taking x-rays on the first appointment and by offering to do so on the second appointment, only to be denied permission to do so by plaintiff), made a diagnosis, prescribed medications, and discussed treatment options. Those options included extraction or root canal treatment. Because plaintiff wanted to keep his teeth, he elected to wait until he was transferred to prison, where, unlike at the jail where he was housed at the time, root canals could be performed. When plaintiff requested dental care on the fourth occasion, June 18, 2015, he was seen and evaluated by a nurse and prescribed pain medication. He was also referred to Dr. Lewis, but he refused to attend the appointment. Obviously, Dr. Lewis cannot be faulted for not seeing plaintiff if he refused to appear for the appointment, just as she cannot be faulted for not taking x-rays of plaintiff's teeth if he would not permit her to do so.

Plainly, Dr. Lewis was not deliberately indifferent to plaintiff's dental care needs. To the contrary, she attended to plaintiff's needs promptly and reasonably. All plaintiff has shown is that he disagreed with Dr. Lewis' diagnosis and treatment, as he believed his decayed teeth could be filled, while she believed extraction or root canal treatment were the only options. As noted above, an inmate's disagreement with the diagnosis or course of treatment is not a basis for a deliberate indifference claim.

The Court concludes that plaintiff has failed to meet his burden of producing evidence that Dr. Lewis was deliberately indifferent to his serious medical (i.e., dental) needs. As plaintiff's claim against Dr. Lewis fails, his *Monell* "policy or custom" claims against CCS and/or Metro Government fail as well. Consequently, the Court shall grant these defendants' motion for summary judgment and deny plaintiff's cross motion for summary judgment regarding his dental care claims.

***Conclusion***

For the reasons stated above,

IT IS ORDERED that defendant Aluoch's motion for summary judgment [docket entry 319] is granted.

IT IS FURTHER ORDERED that the motion of defendants Dr. Lewis, Correct Care Solutions, and the Metropolitan Government of Nashville and Davidson County for summary judgment [docket entry 316] is granted.

IT IS FURTHER ORDERED that the motion of defendants Dr. Lewis, Correct Care Solutions, and the Metropolitan Government of Nashville and Davidson County for leave to file a corrected affidavit [docket entry 331] is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment [docket entry 318, PageID 3714-37] is denied.

IT IS FURTHER ORDERED that all other pending motions are denied as moot.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE
SITTING BY SPECIAL DESIGNATION

Dated: December 10, 2018
Detroit, Michigan